UNITED STATES of America,
Appellee,

v.

W. Horace LOWDER, Appellant.

No. 73-1176.

United States Court of Appeals,
Fourth Circuit.

Submitted Dec. 28, 1973.

Decided Feb. 22, 1974.

Scott P. Crampton, Asst. Atty. Gen., and Meyer Rothwacks, John P. Burke, Robert L. Baker, Richard P. Slivka, Attys., U. S. Dept. of Justice, on brief for appellee.

W. Horace Lowder, pro se.

Before WINTER, CRAVEN and BUTZNER, Circuit Judges.

PER CURIAM:

W. Horace Lowder was convicted in January, 1973, in a trial by jury, of one count of conspiracy to defraud the United States by obstructing the Internal Revenue Service in its task of computing and collecting revenue (18 U.S.C. § 371) and two counts of knowingly filing false corporate income tax returns (26 U.S.C. § 7206(1)). Lowder was sentenced to two years' imprisonment on each count and was fined $10,000 on the conspiracy count and $5,000 on each of the other two counts.

The government's case was based on the theory that Lowder utilized his intimate connection with six family-owned corporations to foster an intricate scheme whereby their tax liability would be obscured and evaded, in the years 1961–65. The basic facts as to those years for each corporation follow:

(1) *All Star Mills, Inc. (Mills):* The original family corporation, founded in 1932 by Lowder's father; principal business was sale of flour and animal feed; Lowder's ownership 11½%. There were 26 other stockholders.

(2) *Lowder Farms, Inc. (Farms):* A second family-owned corporation, founded in 1950 by Lowder's father and uncle; principal business of beef cattle and farming; Lowder's ownership 11½%. There were 24 other stockholders.

(3) *All Star Hatcheries, Inc. (Hatcheries):* Founded in 1959 by Lowder for the business of hatching and growing poultry (broilers); Lowder and wife owned 100% of stock.

(4) *All Star Foods, Inc. (Foods):* Founded in 1959 by Lowder to raise layers and produce and market eggs; Lowder owned 51% through stock held by him and Hatcheries. Mills owned 49%.

(5), (6) *All Star Industries, Inc.,* and *Consolidated Industries, Inc.,* were both named as co-conspirators but their activities did not play any significant role. The former was formed in 1961 to hold a mortgage on property owned by Foods; the latter was formed to be the legal owner of a farm. Lowder owned 100% of the former, 33⅓% of the latter.

Lowder throughout the relevant years was the active manager of the affairs of each corporation. He held, among others, the position of secretary-treasurer in each, was in charge of the overall business and financial operations for all, including bookkeeping, and signed each of the corporate tax returns. That Lowder was responsible for the practices alleged to have constituted a scheme to cover up tax liability was not disputed by him; the other shareholders and officers apparently gave him a free hand in decision-making.

The four active corporations were Mills, Farms, Foods, and Hatcheries, all of whose books and records were kept in the offices of the original company, Mills. Almost all of the paper work—handling sales invoices, posting accounts, etc.—was handled by Mills' employees.

In addition to regular business with third parties, these four corporations, along with the two inactive ones, engaged in a substantial number of intercorporate transactions. Their records over the four-year period showed that some $17 million was transferred by checks running from each corporation to the five others; that some $5 million of this amount was attributable to loans extended or loans repaid; and that the remaining $12 million was reflected as expenses on the books of the paying corporations. The nature and validity of these expensed transfers—whether the amounts represented transactions in real goods and services or whether they were mere transfers of money fraudulently treated as "expenses" to avoid a showing of profits—was the crux of the case before the jury.

The major contentions advanced by Lowder are: (1) conviction on the first count was barred by the statute of limitations, 18 U.S.C. § 3282; (2) the employment of a net worth method in count two was erroneous; (3) the convictions on each count rested on insufficient evidence. For the major portion of the proceedings in the district court and before us, Lowder represented himself. There is no claim that his lack of counsel was the result of indigency. In January, 1972, three months after his indictment and one year before the trial, Lowder discharged his retained attorney over a fee dispute. The legal and factual complexity of the charges have made his chosen course hazardous, but we have endeavored to scrutinize the record and give the assigned errors full consideration. We decline, however, to hear argument *pro se.*

## COUNT I

The conspiracy conviction is assailed as barred by the applicable statute of limitations. We do not agree and, therefore, we affirm.

Lowder and the six corporations were charged with conspiring, from January, 1961, up through the date of the indictment, October 8, 1971, to defraud the United States "by impeding, impairing and obstructing the lawful functions of the Internal Revenue Service, . . . in the ascertainment, computation, assessment and collection of revenue" from the four active corporations.

As alleged and proved the essence of the government's case was that: (1) each corporation had a different accounting year—Mills was on a calendar year basis and the other five were each on different fiscal years; (2) the transfers of money, ostensibly paid for supplies such as feed, would usually occur in large amounts towards the close of the fiscal year for the transferor/"purchaser"; (3) these transfers, treated

as expenses, would in virtually every instance wipe out then-existing profits which had been accumulating to the transferor during its taxable year; (4) the "seller"/transferee would in turn eliminate the effect these amounts had on its books as receipts (and potential profits) when its taxable year closed a few months later by another transfer similarly expensed, and so on, in a process denoted as "rolling" by the investigating agent; (5) the transfers of money, in the aggregate, overstated the value of the goods actually changing hands, i. e., Mills did sell feed to Hatcheries, but not nearly in the quantities which would justify the amounts expensed on the books; (6) the fact that Mills and Farms were on an accrual basis method of accounting and Hatcheries and Foods were on a cash basis method was utilized by Lowder to obscure the real transactions; and (7) the underlying documents—invoices, ledger cards, etc.—against which the validity of these transfers could have been checked were deliberately destroyed or concealed.

Of the eighteen alleged overt acts, all of which were corporate income tax filings for the years in question, the latest occurred on *March 14, 1966,* the date of the filing of Mills' return for the previous calendar year. The date of the indictment is *October 8, 1971,* approximately five years and seven months after the date of the last overt act alleged therein.

■ Before the trial, the court ruled that the six-year statute of limitations specified in 26 U.S.C. § 6531(1) applied to the conspiracy count as well as to the fraudulent filing charges. Lowder asserts that the first count, *charging a conspiracy to defraud* under 18 U.S.C. § 371, was governed by the general five-year limitation period specified in 18 U.S.C. § 3282,[1] but we think the six-year limitation period in 26 U.S.C. § 6531

---

1. Section 3282 provides :
    Except as otherwise expressly provided by law, no person shall be prosecuted . . . for any offense, not capital, unless

the indictment is found or the information is instituted within five years next after such offense shall have been committed.

governs. The general conspiracy statute, 18 U.S.C. § 371, contains no period of limitations. Limitations, for indictments under § 371, are those supplied by other provisions of law, or where there are none, by 18 U.S.C. § 3282 which is a general statute of limitations applicable "[e]xcept as otherwise expressly provided by law." Thus, § 3282 applies where no other statute is applicable, and, stated conversely, its application is ousted when there is a special limitation period prescribed for a specific offense.

■ In the case of prosecutions of violations of the tax laws, 26 U.S.C. § 6531 provides, in relevant part:

No person shall be prosecuted . . . for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that *the period of limitation shall be 6 years*—

(1) *for offenses involving the defrauding* or attempting to defraud *the United States* or any agency thereof, *whether by conspiracy or not*, and in any manner . . . . .

It thus appears that for a conspiracy to defraud the United States by filing false and fraudulent tax returns—the crime charged against Lowder, § 6531 prescribes a six-year period of limitations and, as part of the overall statutory scheme, § 3282, by its terms, is inapplicable.

Two authorities do apparently stand opposed to what seems to be this fairly obvious statutory scheme: Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); and United States v. Klein, 247 F.2d 908 (2 Cir. 1957), cert. denied, 355 U.S. 924, 78 S. Ct. 365, 2 L.Ed.2d 354 (1958).

In *Klein,* on an indictment charging a § 371 conspiracy to defraud in language virtually identical to that contained in count one here, the court, as a prelude to its discussion of the evidence showing the period that the conspiracy continued, stated that 18 U.S.C. § 3282 was applicable. In *Grunewald,* on an indictment charging a conspiracy " 'to defraud the United States in the exercise of its governmental functions of administering the internal revenue laws' " the Court stated that the "first question before us is whether [the § 371 count] was barred by the applicable three-year statute of limitations.[8] " 353 U.S. at 396, 77 S. Ct. at 969. The footnote was to § 3282 (amended in 1954 to provide for the present five-year period).

The government argues that the language in both cases represents not holding, but dicta, since the precise issue here was not contested by the parties. Especially in *Grunewald,* we do not think that the language was dicta. On the other hand, the language was not part of the main holdings in either case; it was not with respect to any issue which was fully briefed and pressed; and it seems nothing more than mere inadvertence on the part of both courts that the specific language of § 6351, and its predecessors, was overlooked. We, therefore, conclude to follow the specific statutory language, rather than the contrary statements in *Grunewald* and *Klein* and hold that the applicable limitation period was six years. The prosecution against Lowder on count one was not barred.

## COUNT II

Lowder was convicted on count two of knowingly subscribing to a false income tax return. 26 U.S.C. § 7206(1). The corporate tax return for Hatcheries for the fiscal year ending May 31, 1965, reported taxable income, before net operating loss deduction and special deductions, of $39,815.44. The government charged that the figure was deliberately and substantially understated.

The government offered a computation showing the increased net worth of Hatcheries for that fiscal year in order to establish the substantiality of the understatement. The computation for Hatcheries for that year was derived from a more extensive net worth computation which embraced all six corpora-

tions over the 1961–65 four-year period on a calendar year basis. The latter showed a total unreported taxable income in excess of $1.5 million for all corporations over the period, with a resulting estimated unreported tax liability of over $400,000.

From the four-year (calendar-year basis) net worth computation, the government's expert witness extracted the computation of net worth increases over that period for Hatcheries alone. Since the increases for Hatcheries were still on a calendar-year basis, they were then converted by monthly pro-ration to reflect fiscal year increases as of each May 31st, Hatcheries' closing date. Thus, for the fiscal year ending May 31, 1965, 7/12ths of the 1964 net worth increase was added to 5/12ths of the 1965 net worth increase to arrive at a 12-month fiscal year net worth increase of $151,372.44. Since Hatcheries' return reported taxable income of $39,815.44, the computation reflected additional taxable income for the fiscal year ending May 31, 1965, of $111,557.00.

■ Having examined the exhibits and retraced the computations, we cannot accept Lowder's claim that this derivation should not have been admissible as proof of understatement. As we understand his brief, his objection amounts to a claim that the government cannot cut through the complexity of the apparent scheme to the substance of corporations' financial activities. The net worth method was most appropriate in this case where the gross figures appearing on the books and transferred to the tax returns were suspect and the underlying documentation was unavailable. See Johnson v. United States, 325 F.2d 709 (1 Cir. 1963). More specifically, since utilization of the different fiscal year dates was apparently an integral part of the scheme to "roll" income to avoid taxation, we think the government was properly allowed to pierce the surface by its pro-rata derivation. Holland v. United States, 348 U.S. 121, 131, 75 S.Ct. 127, 99 L.Ed. 150 (1954).

■ Lowder also attacks the conviction on count two on the additional ground of insufficient evidence. That the taxable income was properly shown to have been understated is already settled. Lowder signed the return. As to the requisite criminal intent, the jury may of course infer that from circumstantial evidence. United States v. Barnes, 313 F.2d 325 (6 Cir. 1963). Such a basis existed, to cite but one example, in Lowder's failure to produce verifying documents for large expense items on Hatcheries' books for the instant year, at times in 1966 when, according to other testimony, the documents should have been in the corporate offices.

■ Construing the evidence most favorably for the government, we find it was sufficient to permit the jury to adjudge Lowder guilty beyond a reasonable doubt. Bell v. United States, 185 F.2d 302 (4 Cir. 1950), cert. denied, 340 U.S. 930, 71 S.Ct. 492, 95 L.Ed. 671 (1951). The conviction on count two must therefore stand.

## COUNT III

■ The conviction on count three was also for knowingly filing a false return under 26 U.S.C. § 7206(1). The government charged that, as to Hatcheries' tax return for the fiscal year ending May 31, 1966, Lowder deliberately failed to report $33,704.28 of taxable income as represented by three checks: (1) two checks from Foods to Hatcheries, dated December 30, 1965, totaling $32,519.28, which amount the government showed was expensed at that time on Foods' books; (2) one check from Farms to Hatcheries dated November 29, 1965, in the amount of $1,185.00, which amount was expensed at that time on Farms' books.

The only objection raised by Lowder is that the evidence was insufficient. He claims that the government failed to show any actual loss of revenue since, by his version, the Foods checks had been mislaid from the dates of making until February, 1967, at which time they were

recorded on Hatcheries' books and computed in the income for that next fiscal year. But what Lowder might have done in subsequent years was irrelevant to whether he filed the return for the instant fiscal year knowing that those checks should have been reported as income to Hatcheries. The jury evidently did not believe his story, and we cannot say that they were unwarranted in so doing. That checks totaling over $33,000 —money which at least could have been earning interest—were mislaid for fourteen months, and turned up after the IRS agent had begun his investigation, was sufficient to support the verdict on the element of intent. Bell v. United States, supra.

Lowder's miscellaneous assignments of error, which he merely listed without discussion in his brief, have been considered. They do not warrant discussion and are devoid of merit.

For the reasons stated, the convictions on each count are affirmed.

Affirmed.