NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1165
_____

UNITED STATES OF AMERICA

v.

HANSEL O. BAILEY,
Appellant
_____

No. 14-1486
_____

UNITED STATES OF AMERICA

v.

DAVID J. HADDOW,
Appellant
_____

APPEAL FROM THE DISTRICT COURT
OF THE VIRGIN ISLANDS
(D.C. Nos. 3-12-cr-00035-001 & -002)
District Judge: Honorable Curtis V. Gomez
_____

Argued: December 11, 2014
_____

Before: CHAGARES, JORDAN, and SHWARTZ, Circuit Judges.

(Filed: February 3, 2015)

Jason B. Freeman, Esq. [ARGUED]
Charles M. Meadows, Jr., Esq.

Meadows Collier Reed Cousins Crouch & Ungerman
901 Main Street
Suite 3700
Dallas, TX 75202

         Counsel for Appellant (No. 14-1165)

Treston E. Moore, Esq. [ARGUED]
Moore, Dodson & Russell
5035 (14A) Norre Gade
P.O. Box 310
Charlotte Amalie
St. Thomas, VI 00802

         Counsel for Appellant (No. 14-1486)

Kim L. Chisholm, Esq. [ARGUED]
Office of United States Attorney
5500 Veterans Drive, Suite 260
United States Courthouse
St. Thomas, VI 00802

Bryan Foreman, Esq.
Office of United States Attorney
1108 King Street
Suite 201
Christiansted, VI 00820

Ronald Sharpe, Esq.
United States Department of Justice
Terrorism & Violent Crimes Section
5500 Veterans Drive, Suite 260
Charlotte Amalie
St. Thomas, VI 00802

         Counsel for Appellees (Nos. 14-1165 & 14-1486)

_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

_____

SHWARTZ, Circuit Judge.

Hansel Bailey and David Haddow appeal their convictions for conspiring to defraud the United States and to evade Virgin Islands taxes.[1] For the reasons that follow, we will affirm.

I

Bailey formed Compass Diversified LLC ("Compass") with Dwight Padilla, a former IRS employee, and incorporated it in the U.S. Virgin Islands. Through Compass, Bailey and Padilla marketed a plan to California-based business owners that allowed them to claim income tax deductions in exchange for payments to Compass. Bailey and Padilla solicited clients and invoiced them a "consulting services" fee, which they calculated by determining "how much of an expense the [client] would need to claim [on their tax return] in order to reduce their tax liability." JA 655, 678. The clients paid these fees to Compass, and a Compass employee deposited them into a Compass bank account. The Compass employee, who worked out of Compass's Virgin Islands office, then transferred a large portion of those funds into a bank account held in her name, and the money was then remitted back to the client in the form of a "gift," JA 654, which Bailey and Padilla viewed as having no tax implications for the recipient under Virgin Islands law ("the gifting program"). Padilla testified that there was no connection

_____

[1] Because these appeals arise from the same trial and share several common issues, they will be consolidated.

3

between the expenses these clients claimed on their tax returns and the invoiced "services."

Bailey hired Haddow to be Compass's chief operations officer. Haddow issued invoices to clients, managed Compass's Virgin Islands office, and directed Compass's accountant how and where to route "gift" payments to clients. Padilla testified that Haddow knew he would "have to issue the invoices with the specific services listed on" them to allow the clients to claim a tax deduction. JA 709.

Compass applied for a tax benefit of its own through the Virgin Islands Economic Development Authority ("EDA"). The EDA offers tax benefits, including reduced income taxes via tax exemptions, to qualifying Virgin Islands businesses through its Economic Development Commission ("EDC"). See 29 V.I.C. §§ 701, 713a.[2] The Virgin Islands Governor approved the EDC's decision to grant Compass's application, but the EDC never issued Compass a certificate confirming its eligibility for EDC benefits. This certificate is a prerequisite to claiming EDC benefits. 33 V.I.C. § 713a(a) (benefits available to those "granted" a certificate). Compass nonetheless claimed a $213,520 EDC tax credit on its 2004 U.S. corporate tax return and a $607,574 EDC tax credit on its 2005 return.

On December 6, 2012, the grand jury indicted Bailey and Haddow for: (1) conspiring to defraud the United States for the purpose of defeating the IRS in the

---

[2] The EDC required applicants to employ a minimum number of Virgin Islands residents on a full-time basis, contribute money to charitable and/or non-profit organizations, and invest at least $100,000 in "an approved industry or business." See 29 V.I.C. § 708.

4

collection of taxes from September 2004 through at least January 16, 2007, in violation of 18 U.S.C. § 371 ("Count One"); and (2) conspiring to evade Compass's income tax obligations to the Virgin Islands from September 2004 through January 2, 2007, in violation of 33 V.I.C. § 1522 ("Count Two").

At trial, the Government offered testimony from Padilla, three Compass employees, six Compass clients, two Virgin Islands government officials, and an IRS employee. No witness made an in-court identification of Bailey or Haddow. The jury convicted Bailey and Haddow on both counts. Bailey and Haddow appeal.

## II[3]

### A

Bailey and Haddow challenge the sufficiency of the evidence underlying certain aspects of their convictions.[4] We apply a "particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998). We review the record "in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt." United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (internal quotation marks omitted) (alteration in original). We "do not weigh evidence or determine the credibility of witnesses." United States v. Gambone, 314 F.3d 163, 170 (3d Cir. 2003) (internal quotation marks

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[4] We review a sufficiency of the evidence claim de novo. United States v. Pavulak, 700 F.3d 651, 668 (3d Cir. 2012).

omitted). Rather, we view the evidence as a whole and "ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt." Caraballo-Rodriguez, 726 F.3d at 430 (internal quotation marks omitted).

1

Bailey and Haddow assert, and the Government concedes, that no witness made an in-court identification of either defendant. Whether the defendant is the same "criminal actor" as the person charged is a question "present in every case." United States v. Wilford, 493 F.2d 730, 734 n.9 (3d Cir. 1974). We must determine whether the convictions may stand despite the Government's failure to elicit and obtain an in-court identification of either defendant from any witness.

A defendant's identity may be "inferred from all the facts and circumstances in evidence." United States v. Prieto, 549 F.3d 513, 525 (7th Cir. 2008); United States v. Alexander, 48 F.3d 1477, 1490 (9th Cir. 1995) (an "in-court identification by a witness is not necessarily required"). Some courts have held sufficient proof of identity exists even absent an in-court identification where, for example: no witness says that the defendant is not the same as the person about whom their testimony relates,[5] the prosecution and defense counsel each "refer[] to the defendant at trial as the [person] involved" in the alleged events, and defense counsel does not object to the prosecution referring to his client as "the defendant," United States v. Weed, 689 F.2d 752, 755-56 (7th Cir. 1982);

---

[5] Several courts have characterized the absence of any witness saying that the wrong person is on trial as "eloquent and sufficient proof of identity." Alexander, 48 F.3d at 1490 (quoting United States v. Weed, 689 F.2d 752, 755 (7th Cir. 1982)). We need not rely on this view in this case.

6

defense counsel's questions and the witness's answers demonstrate that they are discussing the person on trial, United States v. Ayala, 289 F.3d 16, 25-26 (1st Cir. 2002) (defendants' counsel stated "at the outset of the trial" prior to witness testimony that she was "appearing on behalf of" the defendants); and records that "link" the defendant "to the scheme" coupled with testimony from a witness who "never suggest[s] that the person on trial [i]s not" the person to whom the records relate, United States v. Thomas, 763 F.3d 689, 694-95 (7th Cir. 2014); Alexander, 48 F.3d at 1490-91 (two witnesses testified "regarding their contacts with" the defendant and "neither suggested that [he] was not that same man"). Other courts have considered photographs or video evidence, United States v. Hoelscher, 764 F.2d 491, 496 (8th Cir. 1985), a testifying witness's physical gesture toward defense counsel's table, Alexander, 48 F.3d at 1490, and the defendant having the same name as the person charged, United States v. Doherty, 867 F.2d 47, 67 (1st Cir. 1989), as sufficient to establish identity.

Mindful of these decisions and our highly deferential standard of review, we conclude that the evidence was sufficient for a rational juror to find beyond a reasonable doubt that Bailey and Haddow were the individuals named in the Indictment.[6] Neither argued that he was not the person named in the Indictment, or suggested this was a case

---

[6] These cases are inconsistent with others where no in-court identification was elicited. See, e.g., United States v. Taylor, 900 F.2d 779, 782 (4th Cir. 1990) (witness "testified extensively about his earlier contacts with Taylor" such that the jury "could reasonably infer that the Henry Taylor that [the witness] knew . . . was the Henry Taylor who stood trial"); United States v. Cooper, 733 F.2d 91, 92 (11th Cir. 1984) (testimony of FBI agent who interviewed the defendant "several times" during his investigation along with testimony of several witnesses that "a Marvin Cooper was involved" in the alleged events).

of mistaken identity[7] such that they were not the men about whom the witnesses testified.[8] Alexander, 48 F.3d at 1490-91; Weed, 689 F.2d at 755-56. Moreover, the witnesses' answers to questions about each defendant contained responses that reasonably demonstrated that counsels' questions and the witnesses' answers referred to the defendant.[9] Of course, while questions are not evidence, they provided context for

---

[7] This is not to say that a defendant's decision to sit mute and proceed to trial constitutes proof that he is the person named in the indictment.

[8] We need not rely on counsel's opening or closing statements in this case to reject the defendants' claim that the Government failed to prove their identity, although we note that during their closing arguments, each of the defendants acknowledged an affiliation with Compass. See, e.g., JA 1073 ("We know that Dave Haddow and my client, Hansel Bailey, put their own money into this transaction. Folks, this is not something like a Stanford or Ponzi scheme . . . . These guys were trying to make this money work."); JA 1088 ("Now, the critical thing that I want you to understand . . . is that Mr. Haddow is not a partner in anything. He is an employee. . . . He was the only employee at Compass Diversified that had the authority to sign checks."); JA 1097 ("It's been a difficult, difficult journey for Mr. Haddow in particular. He put his soul into this particular job. . . . He worked with his employees to do what he thought the mission and task of Compass Diversified was to be."). Similarly, during opening statements, each counsel introduced himself to the jury as the respective defendant's attorney. See, e.g., JA 129. Some courts have considered defense counsel's remarks during opening and closing statements as establishing the defendant's identity, see, e.g., Ayala, 289 F.3d at 25-26, or—put differently—to show the absence of a dispute about identity.

[9] For instance, Laura Cates, whom Bailey and Haddow both interviewed and hired to work at Compass, had the following exchanges with Haddow's counsel on cross-examination:

> Q: I'm Treston Moore. I spoke with you. But I represent David Haddow.
> . . . .
> Q: When you met Mr. Haddow initially, it was on a referral for employment for Ms. Dean's organization, Working World?
> A: Correct.

JA 511-12;

> Q: What, if anything, did you do you with regard to the tax returns after Mr. Haddow did not sign them?

8

the witnesses' answers and those answers provided the jury with sufficient evidence from which to infer the people discussed were the defendants on trial.[10]

Furthermore, as to Bailey, multiple witnesses testified to having in-person conversations with him. Padilla testified that he has known Bailey since 1996 and attended several meetings with Bailey concerning both the gifting program and Bailey's desire to obtain tax advantages under the EDA. Padilla also testified that he travelled with Bailey to the Virgin Islands to pursue benefits under the EDC program. Three

---

> A: I affixed Hansel Bailey's signature, at his direction, onto the tax documents.

JA 529. Ms. Cates then had the following exchange with Bailey's counsel on cross-examination:

> Q: With regard to Dwight Padilla and his relationship with Hansel Bailey, did you have a chance to observe their interactions and different things on phone calls?
> A: Yes, sir.
> Q: On a daily basis.
> A: Yes.

JA 534.
Similarly, after Bailey's counsel introduced himself to witnesses Jeanna Boschulte and Dwight Padilla, each witness was asked questions about their interactions with Bailey concerning Compass business. See JA 224, 645-46, 717.

[10] The defendants assert that consideration of their statements to the witnesses is improper because counsel's statements are not evidence and that relying on them would absolve the Government of its burden to prove a defendant's identity. While defense counsel's statements or questions are not evidence, answers are, and the jury is entitled to examine a witness's answers and demeanor to determine if the witness is speaking of the same person about whom counsel is asking. Here, the entire context of the examinations showed that the Government, defense counsel, and the witnesses were speaking about the same individuals. Furthermore, defense counsel's concern that the ability to rely on parts of his questions or comments to witnesses will lead counsel to stand mute throughout trial is overblown; a defendant's counsel will still be able to rigorously examine and challenge a witness's suggestion that the person he or she is describing is the defendant.

Compass employees testified that Bailey interviewed them for their positions, with one testifying that she met face-to-face with Bailey when he travelled to the Virgin Islands to conduct Compass-related business. The record also includes Compass's newsletter, which bears Bailey's name and picture and which was admitted into evidence without a limiting instruction, providing evidence from which the jury could conclude the man depicted was the defendant in the courtroom. See, e.g., Ayala, 289 F.3d at 25-26 (affirming conviction in part because finder of fact could make "a visual comparison of the photographs with the defendants in the courtroom"); United States v. Vahalik, 606 F.2d 99, 100 (5th Cir. 1979) (per curiam) (arresting officer testified that "Mr. Vahalik" had been apprehended and where "trier of fact heard the testimony in reference to [photographic] slides while observing them[] and could not have avoided comparison of the appellant to the likeness in the slides that had been identified as "'Mr. Vahalik'"). This evidence was sufficient for a rational juror to have found that Bailey is the same individual named in the Indictment. See, e.g., Doherty, 867 F.2d at 67 (affirming conviction where "appellant has the same name[] and the same nickname" as the person "about whom the witnesses spoke" and where each of the testifying witnesses "saw the appellant in court and heard him referred to as Deliere, and no one denied the identity").

As to Haddow, three Compass employees testified about their personal interactions with him, including their interviews with him, almost daily "face to face" conversations with him, JA 195, and daily work with "Dave" on marketing materials and Bailey's investment ideas, JA 503-05. One witness testified that not only did Haddow interview him for a Compass accounting position, but that he had previously worked with

10

Haddow and that it was Haddow who told him about the position. Not only did no witness give any indication that the "David Haddow" of whom they spoke was different from the defendant, but their answers to questions made clear that they were speaking about the defendant on trial. See supra note 7. Thus, a rational juror viewing the evidence in the light most favorable to the Government could find that Haddow is the same individual named in the Indictment. See, e.g., Weed, 689 F.2d at 755-56.[11]

For all of these reasons, the evidence and inferences drawn therefrom provided proof from which a rational juror could find, beyond a reasonable doubt, that the defendants on trial were the persons named in the Indictment.

2

Bailey separately argues that the evidence was insufficient to prove he acted with the requisite mental state, while Haddow argues that the evidence was insufficient to prove that he knowingly joined in the conspiracy. To secure a conviction for conspiring to defraud the United States under 18 U.S.C. § 371, the Government must prove that: (1)

___

[11] During oral argument, the defendants mentioned United States v. Keller, 512 F.2d 182 (3d Cir. 1975), and argued that it requires that the Government provide an in-court identification of the defendant in every case. From their perspective, therefore, nothing short of an in-court identification will suffice. Keller, however, is distinguishable from this case. In Keller, the Court vacated the defendant's conviction (i) on one count where the lone witness was unable to make an in-court identification of the defendant "even though his attention was specifically directed to the defendants" and where there was "simply no evidence" tending to place the defendant at the scene, id. at 184-85, and (ii) on another count where there was no identification and "no other evidence linking [the defendant] to th[e] transaction," id. at 185. Here, we have overwhelming evidence tying the defendants to the transactions and no evidence that in in-court identification could not have been made by a testifying witness. To read Keller in the fashion the defendants suggest would ignore these significant distinctions and render this Court an outlier as to the type of proof that may be used to establish identity.

11

two or more people agreed to defraud the United States; (2) the defendant became a member of that agreement; (3) the defendant joined the agreement knowing its purpose was to defraud the United States and intended to achieve that goal; and (4) a conspirator committed an overt act in furtherance of the objective. See, e.g., United States v. Schramm, 75 F.3d 156, 159 (3d Cir. 1996); United States v. Rankin, 870 F.2d 109, 113 (3d Cir. 1989). To secure a conviction for conspiring to evade Compass's income tax obligations under 33 V.I.C. § 1522, the Government must show that Bailey and Haddow conspired to "evade or defeat" a tax imposed under Virgin Islands law, which requires proof that: (1) the defendant entered an agreement to evade or defeat the payment of income tax; and (2) that the defendant did so willfully.[12] See Gov't of Virgin Islands v. Hays, 235 F. Supp. 765, 766 (D.V.I. 1964).[13] A defendant's "knowledge and intent may be inferred from conduct that furthered the purpose of the conspiracy." United States v. McKee, 506 F.3d 225, 241 (3d Cir. 2007).

The evidence shows that Bailey acted knowingly and willfully. Padilla testified about Bailey's plan for taking advantage of the EDC program and the Virgin Islands' favorable tax treatment of gifts, and recounted their specific discussions about calculating a fee structure they could use to "save" their clients from tax liability by creating phony

---

[12] "Willfulness is not an element of the crime of conspiring to defraud the United States," McKee, 506 F.3d at 243 n.14, but even if it were, the evidence is sufficient to show that Bailey and Haddow acted willfully, meaning they were aware of a duty and "voluntarily and intentionally violated that duty." Cheek v. United States, 498 U.S. 192, 201 (1991).

[13] Neither party objected to the portion of the jury instructions that included discussion of an 'overt act,' even though none is required under 33 V.I.C. § 1522. Compare 33 V.I.C. § 1522, with 14 V.I.C. § 1522. In any event, overt acts were performed in furtherance of the conspiracy.

invoices Compass clients could use to support false deductions on their tax returns. JA 655. Padilla also testified that Bailey knew that Compass was not actually providing services to its clients, JA 678, and that he and Bailey devised "explanations" to make each client's deduction sound "plausible." JA 700-01. When the IRS began asking questions about Compass, Padilla said that Bailey "expressed a great deal of concern" and instructed Padilla "to get rid of all the records" regarding "anything related to Compass." JA 715. This evidence demonstrates that Bailey was aware of Compass's obligations under the tax laws and sought to avoid detection for having violated them. See, e.g., United States v. Ashfield, 735 F.2d 101, 105, 108 (3d Cir. 1984) (reiterating that a defendant's willfulness may be "inferred from circumstantial evidence" and affirming tax evasion conviction where "the inferential proof" was sufficient to "rationally conclude" that the defendant "at least tacitly approved of his fellow officer's tax evasion scheme"). Thus, a rational juror could find he acted with the requisite mental state.

Haddow's challenge to the sufficiency of the evidence with respect to his knowing participation in the conspiracy also fails. Haddow interviewed and supervised Compass employees in Compass's Virgin Islands office and directed them to deposit client checks and transfer funds from the personal account of a Compass employee back to Compass clients, so as to make the money appear to be a "tax free" gift from a Virgin Islands resident. From this evidence, a rational juror could thus find beyond a reasonable doubt that Haddow knowingly participated in the tax conspiracies.

B

13

Bailey and Haddow next argue that 18 U.S.C. § 3282's five-year statute of limitations barred the convictions under 18 U.S.C. § 371. We disagree. Section 3282 prescribes a five-year limitations period "[e]xcept as otherwise expressly provided by law." Id. As expressly set forth in 26 U.S.C. § 6531(1), a six-year limitations period applies to offenses "involving the defrauding or attempting to defraud the United States . . . , whether by conspiracy or not." Because Count One alleges a conspiracy "to defraud the United States" in violation of 18 U.S.C. § 371, the six-year limitations period applies. United States v. Lowder, 492 F.2d 953, 956 (4th Cir. 1974). The Indictment was therefore timely, as it was filed on December 16, 2012, less than six years after the alleged completion of the crime on January 16, 2007.[14]

The fact the Indictment was sealed until March 8, 2013 does not alter our conclusion that the Indictment was timely filed. United States v. DiSalvo, 34 F.3d 1204, 1218 (3d Cir. 1994) (the statute of limitations generally "ceases to run when an indictment is returned to the district court notwithstanding the fact that it is subsequently sealed and may not have been known to the defendant for sometime thereafter"). Because the date of filing determines whether the Indictment was filed within the statute of limitations, the fact it was sealed is of no consequence.

---

[14] Grunewald v. United States, 353 U.S. 391 (1957), does not control this issue. See United States v. Waldman, 941 F.2d 1544, 1548-49 (11th Cir. 1991) (explaining that the Grunewald Court neither discussed nor cited to its prior decision in Braverman v. United States, 317 U.S. 49, 55 (1942), which applied the six-year period in 26 U.S.C. § 6531(8)'s predecessor to any conspiracy that "involves an attempt to evade or defeat the payment of federal taxes" (internal quotation marks omitted)); United States v. Ingredient Tech. Corp., 698 F.2d 88, 99 (2d Cir. 1983) (characterizing statement in Grunewald as "simply pure oversight").

Moreover, to the extent Bailey asserts that the sealing was improper or that the delay in unsealing warrants relief, such arguments fail. An indictment "may be sealed for any legitimate law enforcement reason or where the public interest requires it." Id. If an indictment is properly sealed, a defendant must demonstrate "substantial prejudice" to dismiss it. Id.[15] Here, the Indictment was sealed in response to the Government's request for additional time to arrest Bailey. See Indictment, Mot. to Seal by USA, Opp'n by USA as to Hansel O. Bailey, David J. Haddow, United States v. Bailey, No. 3:23-cr-00035-01 (D.V.I. Dec. 6, 2012) ("Bailey"), ECF Nos. 1, 2, 118. This was a proper reason to seal the Indictment.[16] Furthermore, Bailey fails to articulate any prejudice he suffered while the Indictment remained sealed or that the approximately three-month period during which the Indictment was sealed was unreasonable as a matter of law. See DiSalvo, 34 F.3d at 1218-19 (no prejudice from indictment's sealing for approximately five months). We thus reject Bailey's claims based upon the sealing of the Indictment.

C

Bailey argues that venue was improper.[17] Although proper venue in a criminal trial "is a constitutionally guaranteed safeguard," United States v. Root, 585 F.3d 145,

---

[15] We review a District Court's sealing decision for abuse of discretion. DiSalvo, 34 F.3d at 1218.

[16] See United States v. Wright, 343 F.3d 849, 858 (6th Cir. 2003) (holding that "the need to avoid compromising an ongoing investigation falls within the range of permissible reasons for sealing an indictment"); United States v. Muse, 633 F.2d 1041, 1044 (2d Cir. 1980) (en banc) (proper purpose where government "feared that the indictment and arrest of Muse would cause his co-defendants to flee" and that its "need to capture them is as justifiable a basis for delay as the need to capture Muse himself").

[17] Although Bailey uses the word "jurisdiction" as well as venue, his argument focuses on the location of his trial, relies on venue law, and thus challenges only venue.

155 (3d Cir. 2009), a challenge to venue, "at the very latest, must be raised in every possible scenario before the jury reaches its verdict," United States v. Pitt, 193 F.3d 751, 762 (3d Cir. 1999). Because Bailey never raised this issue before the District Court, it is waived. See United States v. Robinson, 167 F.3d 824, 829 (3d Cir. 1999) (where alleged defect in venue is not clear on the indictment's face, a defendant "must raise the issue of improper venue before the jury returns a verdict").[18]

D

Bailey next argues that both the jury instructions and evidence constructively amended the Indictment.[19] A constructive amendment "occurs where a defendant is deprived of his substantial right to be tried only on charges presented in an indictment returned by a grand jury." United States v. Vampire Nation, 451 F.3d 189, 204 (3d Cir.

---

See Robinson, 167 F.3d at 828 n.3 (although defendant "speaks in terms of a challenge to jurisdiction, clearly venue and not jurisdictional questions are involved here"). We exercise plenary review over this challenge. Id. at 828-29.

[18] Even were Bailey's venue challenge preserved, it would fail. Venue is proper "wherever a co-conspirator has committed an act in furtherance of the conspiracy." United States v. Auernheimer, 748 F.3d 525, 533 (3d Cir. 2014) (internal quotation marks omitted); 18 U.S.C. § 3237(a) (a conspiracy may be prosecuted "in any district in which such offense was begun, continued, or completed"). Bailey and his co-conspirators committed many acts in the Virgin Islands. Padilla testified that Bailey travelled to the Virgin Islands to meet with government officials about the Virgin Islands gift tax, retained a local law firm to assist in securing EDC benefits, interviewed a prospective Compass employee, telephoned Haddow and other Compass employees in the Virgin Islands, and wired funds to the Virgin Islands. Taken together with the overt acts Haddow committed in the Virgin Islands, this evidence was sufficient to prove venue was proper.

[19] We exercise plenary review in determining whether there was a constructive amendment of an indictment. United States v. Daraio, 445 F.3d 253, 259 (3d Cir. 2006). A constructive amendment is "per se reversible under harmless error review" and is "presumptively prejudicial under plain error review." United States v. Syme, 276 F.3d 131, 136 (3d Cir. 2002).

16

2006) (internal quotation marks omitted). An indictment is constructively amended "when evidence, arguments, or the district court's jury instructions effectively amends the indictment by broadening the possible bases for conviction from that which appeared in the indictment." United States v. Salahuddin, 765 F.3d 329, 340 (3d Cir. 2014) (internal quotation marks and alteration omitted). Our inquiry is "whether the defendant was convicted of the same conduct for which he was indicted." United States v. Daraio, 445 F.3d 253, 260 (3d Cir. 2006) (internal quotation marks omitted).[20]

Bailey argues that the jury instructions constructively amended the Indictment by improperly implying that an EDC certificate is required to obtain benefits under the EDC program.[21] The Indictment recites the EDC's authority to issue tax benefits to qualifying businesses and describes the requirements a business must satisfy to qualify for those benefits. The jury instructions provided accurate information about the EDC program, see 29 V.I.C. § 713a, and hence gave context to the allegations concerning the use of the EDC program to unlawfully gain a tax benefit. It did not broaden the possible bases for a conviction or alter the charges, and thus the instruction did not constructively amend the

---

[20] Although none of Bailey's submissions to the District Court use the phrase "constructive amendment," he preserved this argument when he contended that he was entitled to "a Judgment of Acquittal on the further ground that the theory under which the case was tried impermissibly varied from the indictment," Mot. for J. of Acquittal at 13, Bailey, ECF No. 202; see also Mot. to Dismiss, Mot. for Judicial Notice, Supplement by Hansel O. Bailey re Mot. to Dismiss, Bailey, ECF Nos. 164, 168, 170. Haddow, on the other hand, failed to raise this issue in his opening brief and hence has waived it. United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005) (the "failure to identify or argue an issue in his opening brief constitutes waiver of that issue on that appeal").

[21] The District Court instructed that "in order to qualify and remain eligible for benefits as an EDC company, that company must fulfill all of its qualifications and requirements. A certificate issued to a successful EDC applicant is required to include the date or dates upon which benefits shall commence and terminate." JA 1022.

17

Indictment. Daraio, 445 F.3d at 260-61 (no constructive amendment where the District Court "accurately instructed the jury on the basic elements of tax evasion and focused the jury's attention on the conduct that the indictment charged").[22]

The District Court's willfulness jury instruction also did not amend the Indictment. Contrary to Bailey's contention that the instruction "effectively remov[ed]" the Government's burden to prove willfulness, the record shows that the District Court informed the jury of the Government's burden to prove willfulness, defined the term "willfully," and instructed the jury to apply this definition "to all of the tax offenses charged in this case." JA 1023. These instructions "ensured that the jury would convict . . . if at all, for a crime based on conduct charged in the indictment." Daraio, 445 F.3d at 260. Thus, the willfulness instruction did not constructively amend the Indictment.

Bailey's contention that evidence of a separate tax violation constructively amended the Indictment also fails to support his argument. In response to a Compass employee's concern about the large amount of money deposited into her personal bank account, Bailey and Haddow advised her to refrain from filing her personal tax return. While this may be evidence of a separate crime, it does not show that the Government departed from the charges in the Indictment against Bailey. Rather, the Government offered this evidence to demonstrate Bailey and Haddow knew Compass's activities were

---

[22] We reject Bailey's claim that the Government "unconstitutionally based criminal liability on [his] alleged failure to comply with the EDC regulatory and statutory framework," Bailey Br. 37. The EDC evidence was offered to show how and why he engaged in the conspiracy scheme in the Virgin Islands. Moreover, the Government did not argue, nor was the jury instructed, that failure to comply with the EDC requirements constituted a violation of the criminal laws.

18

not legitimate and took a step to help conceal it. This testimony contributed to the proof of the charges and did not broaden the bases for Bailey's conviction or "modify the elements of the crime[s] charged." United States v. Voburgh, 602 F.3d 512, 534 (3d Cir. 2010) (internal quotation marks omitted). Thus, this evidence, like the jury instructions, did not constructively amend the Indictment.

## E

Finally, Haddow challenges the calculation of his restitution, contending that the Government failed to prove the amounts—$1,104,701 on Count One and $821,094 on Count Two—by a preponderance of the evidence under 18 U.S.C. § 3664(e).[23] This challenge is meritless. As to Count One, Padilla testified that the fees Compass charged its clients equaled the fake expense deductions those clients subsequently took on their tax returns and documents showed the resulting tax savings to the clients and tax loss to the United States. Furthermore, Haddow's assertion that some of those clients may have since paid those taxes and therefore his restitution should be reduced fails because he produced no evidence of this and hence no provided basis for the District Court to reduce the restitution ordered for Count One. As to Count Two, the $821,094 restitution figure represents the tax loss from the EDC tax credits improperly claimed on Compass's 2004 and 2005 returns. Thus, the evidence supported the restitution order and it was therefore appropriate.

## III

---

[23] We review the appropriateness of a restitution award for abuse of discretion. United States v. Simmonds, 235 F.3d 826, 829 (3d Cir. 2000).

19

For the foregoing reasons, we will affirm the judgments of the District Court.

*United States v. Hansel Bailey* (Case No. 14-1165) & *United States v. David Haddow* (Case No. 14-1486)

JORDAN, *Circuit Judge*, dissenting in part

I understand and appreciate the public interest in seeing that Mr. Haddow does not escape the justice he seems so richly to deserve. There is very little doubt indeed that he is the David Haddow that everyone in the courtroom was talking about throughout the trial, and the evidence of his guilt was overwhelming. My difficulty – and I find it insurmountable – is that there is literally no evidence at all in the record identifying him as the "David Haddow" named in the indictment.[1]

Our precedent is clear on the question of identification: a defendant's alleged participation in criminal activity is at issue in every case, "unless the defendant chooses to admit participation and plead an affirmative defense." *United States v. Wilford*, 493 F.2d 730, 734 n.9 (3d Cir. 1974); *see also United States v. Alexander*, 48 F.3d 1477, 1490 (9th Cir. 1995) ("Identification of the defendant as the person who committed the charged crime is always an essential element which the government must establish beyond a reasonable doubt."). If we were free to take a looser approach to the question, I would be tempted to do so in this case. But I do not believe that we have that freedom. We have never before held that the government may neglect to present any evidence of identity and then rely on the sorts of inferences that my colleagues in the Majority find sufficient. I cannot agree that such inferences – even if they can be considered circumstantial

---

[1] As to Haddow's co-defendant, Bailey, there was at least a picture of the man in the evidence, along with his name, from which the jury could rationally conclude that the "Bailey" in the document was the same Bailey sitting in the courtroom and the same one that all of the witnesses and other evidence were speaking about.

1

evidence –satisfy the government's burden of proving a defendant's identity beyond a reasonable doubt, and I am unpersuaded by the Majority's effort to distinguish *United States v. Keller*, one of our most salient precedents. *See* 512 F.2d 182 (3d Cir. 1975) (reversing conviction where government presented only a deficient photographic lineup to establish the defendant's identity, and rejecting government's argument that the deficiency could be remedied by corroborating evidence).

Our law is what it is, and, sadly, the government's deficient performance in putting on its proof leaves us no choice, I believe, but to vacate Haddow's conviction. Mistakes happen, and, even experienced and dedicated prosecutors can make them. When they do, though, the best course is to promptly face and try to fix them. In this instance, that did not happen. After the defense quite rightly made a motion for judgment of acquittal, the government simply endeavored to defend the non-existent record of identification. It could have, and should have, immediately moved to reopen the record so that one of its many witnesses capable of identifying Haddow could have been recalled for the few questions necessary to establish the point. It did not do so but waited to seek reopening until after the jury had been charged and, apparently, had retired, at which point the District Court did not have a meaningful opportunity to rule on the motion before the jury returned its verdict.

While serving on the New York Court of Appeals, Justice Benjamin Cardozo once famously bemoaned that a rule excluding evidence based on policing that violates the Constitution meant, "[t]he criminal is to go free because the constable has blundered." *People v. Defore*, 242 N.Y. 13, 21 (N.Y. 1926). The law has long since come to accept

2

such an unpalatable result as the price that must sometimes be paid for preserving fundamental rights.  So it is here.  No one, perhaps, but Haddow himself wants to see him walk away from prison now, but the government's utter failure to present evidence to satisfy its burden of proof as to his identity is not something we should overlook or condone.

In short, I reluctantly and partially dissent from the otherwise excellent opinion of my colleagues and the judgment order, to the extent it upholds the conviction of David Haddow.